# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Michael Gray, | Case No.: 2:18-cv-01551-JAD-BNW |
| Plaintiff | |
| v. | **Order Denying Motions for Summary Judgment and Rule 52 Judgment** |
| Reliance Standard Life Insurance Company, | [ECF Nos. 40, 41] |
| Defendant | |

    Michael Gray brings this ERISA lawsuit to stop Reliance Standard Life Insurance Company from taking back benefits that the insurer claims to have overpaid him. The parties both move to end this case—the insurer under Federal Rule of Civil Procedure 56 and Gray under Rule 52. But the parties' briefing and record leaves unresolvable an issue of paramount importance, and one that precludes me from granting judgment in either party's favor at this stage—under which contract did Reliance grant Gray's disability benefits? Because neither party answers this foundational question, I am unable to enter judgment for either party based on this record, so I deny their motions. But I do so without prejudice to their ability to re-urge those requests by April 13, 2021, supported by evidence establishing which contract governs this dispute.

## Background

    Gray worked for the Los Angeles Police Department for several decades before his disability left him unable to work. One of the benefits of Gray's job was long-term disability insurance provided by the Los Angeles Police Protective League (LAPPL), under which Gray submitted a claim in September 2015.[1] Another benefit of the job was a pension, which he

---

[1] AR 34. The Administrative Record is in the docket at ECF No. 37.

began collecting some months later.[2]  After some back and forth, Reliance approved Gray's benefits claim in February 2016, explaining that he became eligible for benefits beginning in November 2015, paying him for those months, and notifying him that it would follow up in June 2016 to determine his continued eligibility.[3]  Ultimately, Gray's benefits continued through most of 2017,[4] until the insurer informed Gray that it had overpaid him more than one hundred thousand dollars in benefits.[5]  According to the insurer, Gray's disability benefits should have been offset by the amount he was receiving in pension benefits.[6]  So it reduced his benefits and demanded that he pay back the excess.[7]

When Gray asked for a copy of his policy, the insurer sent him one that had been amended in 2016 and listed the LAPPL as the policyholder (the LAPPL policy).[8]  Under that policy, for the insurer to offset a claimant's benefits, the offset amount must "result from" the same disability underlying the individual's long-term disability benefits claim.[9]  Gray appealed the insurer's decision to reduce and recoup the money because his pension benefits did not "result from" his disability.[10]  But the insurer doubled down, telling Gray that it had inadvertently sent him the wrong policy.[11]  The insurer then sent Gray what it purports to be the

---

[2] AR 237.
[3] AR 807–13.
[4] AR 841.
[5] AR 842–49.
[6] AR 842.
[7] AR 842.
[8] *See* AR 324–55.
[9] AR 341.
[10] AR 356–58.
[11] AR 2231.

2

correct policy—one that was last amended in 2013 and lists The RSL Group and Blanket Insurance Trust as the policyholder (the Trust policy).[12] Under that policy, the insurer can offset Gray's pension even if that pension did not result from the same disability.[13]

## Discussion

As the parties agree, the policies are held by distinct policyholders. That means that LAPPL's policy does not amend the terms of the Trust policy but instead supersedes it.[14] So my decision here is framed by the plain terms of the LAPPL policy,[15] which contains a clause that allows employees who are previously covered by another plan to transfer their coverage to the LAPPL policy.[16] But the policy carves out an exception to this clause for employees who already started receiving benefits under a previous plan.[17] So to find that Gray was covered by the LAPPL policy and its later amendments as he urges, the LAPPL policy would have to have gone into effect before the November 2015 date that he became eligible to receive benefits. To instead find that Gray was covered by the Trust policy, as Reliance contends, the LAPPL policy would have to have gone into effect after the date that he began recovering benefits. The parties' dispute thus turns on the date on which LAPPL terminated its participation in the Trust policy and obtained its own.

---

[12] AR 1497, 1617.

[13] AR 1638.

[14] *Martinez v. Beverly Hills Hotel*, 695 F. Supp. 2d 1085, 1109 (C.D. Cal. 2010).

[15] *Fier v. Unum Life Ins. Co. of Am.*, 629 F.3d 1095, 1098 (9th Cir. 2011) ("We interpret terms in ERISA insurance policies in an ordinary and popular sense as would a [person] of average intelligence and experience." (citation and internal quotation marks omitted)).

[16] AR 335.

[17] AR 335.

3

Despite the parties' invocation of the policy's provisions, the answer to this foundational question is not apparent from the documents. According to Reliance, the LAPPL policy began on March 1, 2016, so Gray's claim (which granted him benefits beginning in November 2015) can only be governed by the Trust policy.[18] But the LAPPL policy's language does not reflect that the insurer issued the separate policy to LAPPL on March 1, 2016. Instead, the terms reflect that the policy's effective date is September 1, 2006.[19] And far from plainly demonstrating that the LAPPL policy became operative in March 2016, the policy states that the 2016 document "amends the Long Term Disability policy previously issued to you by us," defining "you" as LAPPL, its subsidiaries, divisions, or affiliates.[20] The amendment is attached to the final pages of the contract and amends the contract for Vermont residents.[21] The use of the term "amends" thus suggests that the 2016 version was in effect at some point before March 2016.[22]

However, that also means that it is possible that the LAPPL policy went into effect after Gray became eligible for benefit coverage at the end of 2015. Under the terms of the LAPPL policy, employees who were covered by prior long-term disability insurance are covered by the new policy unless they "[are] receiving long term disability benefits, become eligible for coverage under another group long term disability insurance plan, or [have] a period of recurrent

---

[18] ECF Nos. 40 at 6; 42 at 13.

[19] AR 324.

[20] AR 324.

[21] AR 352.

[22] *Amend, Black's Law Dictionary* (11th ed. 2019) ("To correct or make small changes to (something written or spoken) . . . . 2. To change the wording of; specif., to formally alter (a statute, constitution, motion, etc.) by striking out, inserting, or substituting words . . . ."). Reliance also argues that even if Gray is covered by the LAPPL policy, he does not get the benefit of the 2016 amendment because his rights vested before the amendment's effective date. But resolving that question before determining which policy Gray falls under is impossible.

disability under the prior group long term disability insurance plan."[23] So if LAPPL obtained the policy after Gray became eligible for benefits in late 2015, then by the contract's ordinary terms, Gray's claim would remain under the Trust policy.

When a policy's plain terms are ambiguous courts can turn to extrinsic evidence to determine the policy's meaning.[24] But no extrinsic evidence in the record clarifies the date that the LAPPL policy began. For example, Gray offers the insurer's notes and other documents that Reliance gave him, all which reference LAPPL as the policyholder and its policy number. But as the Trust policy reflects, LAPPL's participating unit number and its policy number under the LAPPL policy are identical, making it possible that the insurer referenced LAPPL as the policyholder for its employees that were covered by the Trust policy.[25] And the insurer offers little more than the policies themselves, which as I previously noted, do not alone explain which policy was in place when Gray sought coverage. These are material ambiguities that are simply unresolved by the policy's plain terms or the evidence in the record.

While this does not mean that the evidence and arguments offered by the parties are irrelevant to ultimately resolving this issue, some additional evidence or reference in the record explaining when the LAPPL policy went into place is needed to connect the parties' untethered arguments. And while I recognize that courts are generally confined to the record presented to the administrator in ERISA cases,[26] I cannot even reach the salient issue of whether the insurer erred here without first determining which contract applies. This gap also leaves me unable to

---

[23] AR 335.

[24] *Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 708 (9th Cir. 2012) (citation omitted).

[25] AR 2, 4.

[26] *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 969 (9th Cir. 2006); *see Opeta v. Northwest Airlines Pension Plan for Cont. Emps.*, 484 F.3d 1211, 1217 (9th Cir. 2007).

5

determine the appropriate standard of review because the policies' terms appear to demand different levels of review based on the discretion that each offers the plan administrator.  So I deny the parties' motions without prejudice to their ability to re-urge those requests.  In doing so, the parties should provide evidence of when LAPPL began its separate policy or some evidence that Gray did or did not fall under the LAPPL policy's transfer-of-insurance clause.

## Conclusion

IT IS THEREFORE ORDERED that plaintiff Michael Gray's motion for Rule 52 judgment **[ECF No. 41] is DENIED without prejudice**.

IT IS FURTHER ORDERED that defendant Reliance Standard Life Insurance Company's motion for summary judgment **[ECF No. 40] is DENIED without prejudice**.

IT IS FURTHER ORDERED that **the parties have until April 13, 2021, to re-urge their requests consistent with this order**.

_____
U.S. District Judge Jennifer A. Dorsey
March 24, 2021