UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Michael Gray, <br><br> Plaintiff <br><br> v. <br><br> Reliance Standard Life Insurance Company, <br><br> Defendant | Case No.: 2:18-cv-01551-JAD-BNW <br><br> **Order Resolving Cross-Motions for Judgment** <br><br> [ECF Nos. 50, 51] |

This employee-benefits case centers on two contracts: one requires a reduction in benefits for certain additional funds that the employee receives and the other requires that reduction only if the additional funds stem from the employee's disability. Plaintiff Michael Gray advocates for the latter version and sues Reliance Standard Life Insurance Company to prevent the insurer from recovering the amount that it claims to have overpaid him. The parties sought to end this dispute earlier this year, but because neither side established which contract applies to Gray, I denied their motions without prejudice to their ability to reurge them with additional evidence or a reference somewhere in the record to resolve this foundational question. They do so now, the insurer under Federal Civil Procedure Rule 56 and Gray under Rule 52, offering a declaration from one of the insurer's employees and some emails about the drafting process. While the path to determine which contract controls this dispute was anything but simple, the resolution of this dispute based on that result is. I deny Gray's Rule 52 motion and grant Reliance's motion for summary judgment because I find that the new policy was not in effect until after Gray's claim accrued.[1]

---

[1] I deny Gray's request for oral argument because I find that these motions are suitable for disposition without oral argument. L.R. 78-1.

**Background**

After a disability left Gray unable to continue working for the Los Angeles Police Department, he applied for long-term disability insurance provided by the Los Angeles Police Protective League (the League).[2] In February 2016, Reliance approved Gray's application, backdated the benefits to his November 2015 eligibility date, and began to pay him more than $5,000 a month through most of 2017.[3] But while the insurer had reviewed Gray's application several times in the first years of his benefits, a key offset had apparently slipped through the cracks—the pension that he started collecting in December 2015. The insurer claimed that it should have been reducing Gray's monthly allowance by the amount that he received from his pension, so Reliance demanded that Gray repay $110,792.70 in overpaid benefits and notified him that it would stop paying his benefits until it received such payment.[4]

Hoping that the company had made a mistake, Gray appealed the decision and sought a copy of his policy.[5] But to his surprise, the version of the policy that the insurer sent—the LAPPL policy—was amended in 2016, listed the League as the policy holder, and permitted its recalculation only if the offset amount "results from the same [t]otal [d]isability for which" the insured receives disability benefits.[6] So he reiterated his concern that the wrong language was applied.[7] The insurer denied Gray's appeal and revealed that it had accidentally sent Gray a new

---

[2] AR 34. The administrative record is in the docket at ECF No. 37.
[3] AR 807–13, 823.
[4] AR 842–44.
[5] AR 359–60.
[6] AR 341; *see* AR 141–42.
[7] AR 359–60.

policy, not the policy that covered his claim.[8]  It then sent him a policy that was last amended in 2014 and lists The RSL Group and Blanket Insurance Trust as the policy holder—the Trust policy.[9]  But Gray was not convinced that his claim was covered by the Trust policy after reviewing it.[10]

Believing that his benefits were wrongly "terminated," he sues the insurer to prevent it from clawing back more than $100,000 in benefits.  After one dismissal order and one amendment, the parties both sought to end the dispute—the insurer on summary judgment and Gray under Rule 52.  But the parties' briefing left me with more questions than answers about what policy governed Gray's claim.  So I denied their motions and ordered them to renew their requests with evidence that demonstrates which policy applied at the time that Gray's claim was approved.  After reviewing the new evidence presented, the administrative record, and the parties' motions, I find that Reliance has established the Trust policy as the one that applies to Gray, grant the insurer's motion, deny Gray's, and close this case.

## Discussion

At base, this dispute asks whether the insurer erred when it applied the terms of the Trust policy to reduce Gray's benefits, and not the LAPPL policy.  But before I can answer that question or determine what standard of review applies, I must first determine whether the LAPPL policy went into effect before Gray became eligible for benefits in November 2015.  The parties move separately to end this case under different rules.  But the motions, despite their titles, are largely just vehicles for me to resolve this dispute.  So, turning to Gray's motion under

---

[8] AR 852–53.
[9] AR 1–32.
[10] AR 626, 743–44, 1364.

Rule 52, I review the administrative record, the additional evidence that the parties submit, and the arguments that the insurer raises under its summary-judgment motion to decide the primary factual issue.[11] Based on the evidence provided, I find that the LAPPL policy went into effect after Gray's claim accrued, so this dispute is governed by the Trust policy. And after a de novo review of the insurer's decision, I find that it did not err.

## I. Legal standard

Federal Rule of Civil Procedure 52 permits a court to try actions "on the facts without a jury." While Rule 43 generally "requires that 'testimony' be taken in open court," "the district court may try the case on the record that the administrator had before it."[12] ERISA disputes also change the summary-judgment calculus. "In the ERISA context, 'a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply.'"[13]

## II. The Trust policy governs this dispute.

As a preliminary matter, I note that the Trust policy and the LAPPL policy are not different versions of the same policy, they are distinct ones: they are held by different

---

[11] While I note that generally courts are permitted to review evidence outside the record in limited circumstances, I find that it is appropriate here to resolve this dispute under either a de novo or abuse of discretion standard of review. *See Opeta v. Nw. Airlines Pension Plan for Cont. Emps.*, 484 F.3d 1211, 1217 (9th Cir. 2007) ("[T]he district court should exercise its discretion to consider evidence outside of the administrative record *only* when circumstances *clearly establish* that additional evidence is *necessary* to conduct an adequate de novo review of the benefit decision." (internal quotation marks and citation omitted)); *cf. Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 708 (9th Cir. 2012) (permitting courts under an abuse-of-discretion standard to rely on extrinsic evidence when the ERISA plan is ambiguous).

[12] *Kearny v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999).

[13] *Harlick*, 686 F.3d at 706 (citation omitted).

4

policyholders, originate in different states, maintain different effective dates, and have separate policy numbers.[14]  The plain terms of the polices guide my analysis.  The LAPPL policy contains a clause that permits employees who are previously covered by another plan to transfer that coverage to the LAPPL policy, unless the employee already started receiving benefits under a previous plan.[15]  So the LAPPL policy governs this dispute only if it went into effect before Gray became eligible for benefits.  To clarify the date that the policy went into effect, Reliance offers a declaration from its National Practice Leader and former assistant sales manager, Chris Nakaishi, who declares that the LAPPL policy's effective date is March 2016.[16]  Though Gray highlights various inconsistencies within the record, none of them demonstrates that the LAPPL policy went into effect at an earlier date.

### A. LAPPL was a participating member in the Trust policy.

Gray argues that the insurer cannot provide any evidence that it participated in the Trust policy because it hasn't produced a signed copy[17] and the version that it does offer is merely the "master policy" and does not include the League's specific terms.[18]  He also argues that some of the statements within Nakaishi's declaration are unsupported by the record and that the insurer lacks an explanation for an amendment within the LAPPL policy it provides.

---

[14] *Compare* AR 1–32 *with* AR 324–55.

[15] Gray also argues that the offset provision under the LAPPL policy was part of the Trust policy at some point instead of the broad provision included in the Trust policy that's in the record.  ECF No. 59 at 5–6.  But the inferences he seeks are not reasonable ones.  To find that the offset provision limiting the offset to other benefits from the same disability, I would have to find that the Trust policy that the insurer sent to him, and confirmed by Nakaishi, was the wrong version; that there's a third version somewhere; and that all the insurer's employees were hiding this change—all without any evidence to support that inference.  I decline his invitation to do so.

[16] ECF No. 50-2.

[17] ECF Nos. 51 at 14; 54 at 3.

[18] ECF No. 52 at 4.

5

The League was a participating member in the Trust policy. As Nakaishi explains, the League sought a long-term disability plan from the insurer in the mid 2000s.[19] It was initially covered as a participating unit under the policy held by the RSL Group and Blanket Insurance Trust, which it maintained for almost a decade with the participating unit number LTD 114978.[20] He notes that eventually, the League changed brokers and sought to amend its terms under the Trust policy.[21] But one of those changes—changing the situs from Rhode Island to California—was not possible as an amendment.[22] So instead of amending those terms, the League negotiated its own policy (the LAPPL policy) that went into effect the next year, keeping its original unit number as its new policy number.[23] Nakaishi attaches a series of emails between him and other Reliance employees that discuss the transition to the new policy and confirm that the League was originally under the Trust policy.[24]

Gray's challenges to the version of the Trust policy offered by the insurer do not change this result. While he's correct that there is no signed version of the Trust policy in the record, as Reliance points out, there's also not a signed version of the LAPPL policy. If a missing signature means that the policy does not apply, then Gray isn't covered by the LAPPL policy either; that can't be true because Gray paid premiums toward some policy and began collecting benefits under it. And Gray's argument that the Trust policy offered isn't the one specific to the

---

[19] ECF No. 50-2 at ¶ 3.
[20] *Id.* at ¶¶ 3–4.
[21] *Id.* at ¶ 5.
[22] *Id.*
[23] *Id.* at ¶¶ 6–9.
[24] *See, e.g.*, *id.* at 7 ("LAPPL is currently written under our Trust for the LTD, but it will be moving to the CA Sitused plan, effective 3/1/2016."); 9 ("They are moving from the Trust to the CA Sitused contract . . . ."); 8 (asking whether the League was required to fill out "a new application . . . since it won't be through the trust").

6

League is belied by the document's language.  The second page notes that the League is the participating unit and its participating unit number, the schedule-of-benefits provision defines which League employees are covered by the policy, and the other-income-benefits clause underlying this dispute is specific to City of Los Angeles employees.[25]  The declaration and document's terms thus squarely put these issues beyond dispute.

      Gray also argues that the insurer cannot demonstrate that the League was ever covered by the Trust policy because it hasn't provided communication from the League to confirm that it sought to change the plan.[26]  But the insurer need not offer communication from the League to demonstrate that it wanted a new policy or that it wanted to list an earlier date to ensure there wasn't a gap in coverage for its employees.  Nakaishi's declaration demonstrates that he has personal knowledge of the changes and provisions that LAPPL sought when it asked to transition its policy to a California one,[27] so his declaration and the Trust policy itself offer more than enough for me to conclude that the League was a participating unit in the Trust Policy.  Even if I were to disregard Nakaishi's declaration on this issue, Gray has not demonstrated how emails or letters from the League's representatives would affect this dispute.  As Gray notes, he "does not know how or whether those requested changes apply to any issue before the [c]ourt."[28]  His speculation alone is insufficient to establish that the League was never a participating member of the Trust policy.

---

[25] AR 2, 7, 19.
[26] ECF No. 54 at 5–6.
[27] *See* ECF No. 50-2 at ¶¶ 1–2, 7, 10.
[28] ECF No. 54 at 5.

### B. The LAPPL policy went into effect in March 2016.

Because I find that the League was a member of the Trust policy at some point, for Gray to succeed on his claim here, the League must have switched to its new policy before he became eligible for benefits in November 2015. As Gray contends, there are various inconsistencies throughout the plan itself that makes it impossible to determine the date that the policy began. For example, the plan lists September 1, 2006, as the effective date—the same date that the League started receiving coverage under the Trust policy.[29] And the policy contains an amendment for Vermont residents.[30] But while it's curious that the LAPPL policy includes an amendment in its first iteration, that provision alone does not demonstrate that the policy was in effect when Gray became eligible for benefits. Nor does the "effective date" foreclose the possibility that the policy went into effect later. Nakaishi's declaration resolves this ambiguity.

According to Nakaishi, the League's new broker began asking about the policy's changes in 2015.[31] To make those changes a reality, the League "agreed to have Reliance Standard issue a new long term disability policy [that] was delivered in California . . . ."[32] So, on March 1, 2016, the insurer delivered the new policy to the League and on that date, terminated it as a participating unit of the Trust policy.[33] Nakaishi also resolves the date discrepancy: the League requested a different effective date to reflect "the date when Reliance Standard originally insured

---

[29] *Compare* AR 324 *with* AR 2.
[30] AR 352.
[31] ECF No. 50-2 at ¶ 5.
[32] *Id.*
[33] *Id.*

8

[the League] for disability benefits.  It was not intended to mean that the policy issued directly to [the League] dated back to 2006 as it did not."[34]

Gray's reliance on the LAPPL Certificate to demonstrate that the policy was in effect in 2006 is also misplaced.  According to Gray, because the policies require the insurer to issue a Certificate of Insurance and the only Certificate of Insurance in the record is one that matches the LAPPL policy's language, that certificate must be from 2006.  But as I found *supra*, the policies are distinct and held by different policyholders: the certificate lists the League as the plan sponsor and administrator, and "is dated March 15, 2016."[35]  The certificate in the record thus has no bearing on the Trust policy's start date.[36]

Finally, Gray contends that the LAPPL policy must have gone into effect early enough to cover his claim because, when given the opportunity to offset his benefits under the Trust policy's terms, the insurer repeatedly failed to do so.  I find that that Reliance knew as early as February 2016 that Gray started to receive his pension the month before, but that its oversight does not prove that the policy went into effect before this decision.  As the company's emails make clear, the drafting process for the new policy began in early 2016.[37]  When Reliance first sought information about Gray's other-income benefits, it was still finalizing the new policy language.[38]  And by the time that Gray's employer sent over his pension details, the LAPPL

---

[34] *Id.* at ¶ 10; *see* ECF No. 50-2 at 6.

[35] AR 646, 678.

[36] Though the insurer offers the Trust policy's certificate in its response, ECF No. 55-1, because I find that the absence of the certificate does not affect this determination, I need not and do not resolve whether its late disclosure prohibits its consideration. *See* ECF No. 59 at 1–5 (objecting to the certificate's admissibility).

[37] *See* ECF No. 50-2 at 6–10.

[38] *Id.*

9

policy still hadn't gone into effect.[39] Although the insurer failed to correctly include Gray's benefits in its calculation, that mistake does not demonstrate an earlier implementation date for the LAPPL policy. As Gray makes clear, he's abandoned his equitable-estoppel claim,[40] so he cannot recover under the terms of the LAPPL policy even if the insurer erred in initially calculating his benefits. I'm left to weigh a declaration from an employee directly involved in the drafting process and emails that explain some—but not all—discrepancies, against Gray's bald speculation. Doing so, I find that the evidence before me demonstrates that the LAPPL policy was delivered as a new policy in March 2016, after Gray's benefit-eligibility date.

### C. Gray's claim did not accrue under the new policy.

Gray also maintains that even though the polices are distinct, the policy in effect when the insurer reduced his benefits—not the policy in effect when he became disabled—should apply under *Grosz-Salomon v. Paul Revere Life Insurance Company*.[41] The *Grosz-Salomon* court was asked to resolve whether an individual's claim was governed by the plan in effect when the individual became disabled or the one in effect when that individual was denied benefits.[42] The panel noted that without a clear decision from the employer vesting an employee's rights under the plan, the policy version in place at the time the claim is denied governs.[43] But as the Ninth Circuit explained in *Shane v. Albertson's Inc.*, the *Grosz-Salomon* holding is limited.[44] In *Shane*, an employer sought to enforce an amended version of a benefits

---

[39] *See* ECF No. 51 at 4 (noting the dates that Gray sent information to Reliance).
[40] ECF No. 54 at 10.
[41] *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154 (9th Cir. 2001).
[42] *Id.* at 1159.
[43] *Id.* at 1160.
[44] *Shane v. Albertson's Inc.*, 504 F.3d 1166, 1169 (9th Cir. 2007).

10

plan against its employee to deny her benefits under *Grosz-Salomon*.[45] The *Shane* court distinguished *Grosz-Salomon*'s holding, noting that the *Grosz-Salomon* "employee's disability[-]coverage claim was governed by the plan in effect at the time the employee's claim accrued because '[n]othing in [the employee's policy with the employer] . . . assured employees that their rights were vested.'"[46] The court held that, because the original plan noted that the employee's claim was "to be provided for under the terms of the Plan in effect at the time [her] disabilit[y] commenced[,] . . . her claim" was "governed by the "earlier plan."[47]

*Shane* resolves the issue here. Unlike the *Grosz-Salomon* plan, which did not ensure any right to the employee in the future, the Trust policy makes clear that any termination of the plan "will not affect any claim [that] was covered prior to termination."[48] So just like the claim in *Shane* that was not affected by any later amendment, Gray's claim was not impacted by the termination of the League's participation in the Trust policy. The LAPPL policy confirms this reading: "If an employee is receiving long[-]term disability benefits . . . has a period of recurrent disability under [a] prior group long[-]term disability insurance plan, that employee will not be covered under [the LAPPL] Policy."[49] Even if the plan could be amended, the Trust policy offers clear language bringing Gray's claim under its umbrella.

**III.     Reliance did not err in reducing Gray's benefits under the other-income provision.**

Having determined that Gray's claim is covered by the Trust policy in effect in 2015, I now turn to whether the insurer erred in reducing Gray's benefits under the terms of that policy.

---

[45] *Id.* at 1168–69.
[46] *Id.* at 1169.
[47] *Id.* (brackets in original).
[48] AR 14.
[49] AR 335.

11

Courts review a "plan's denial of benefits de novo 'unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'"[50] "If de novo review applies . . . [t]he court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits, without reference to whether the administrator operated under a conflict of interest."[51] The Trust policy does not unequivocally grant discretion to the plan administrator to interpret the plan's terms, so I review Reliance's decision de novo.

Under the other-income-benefits provision, the insurer may reduce an individual's long-term-disability benefits by the amount that he receives from his retirement benefits "paid for by the City of Los Angeles."[52] This includes the "money [that] the [i]nsured is entitled to receive upon early or normal retirement" "under" "any plan," provided that the "pension benefits include any credit for employment with the City of Los Angeles."[53] Gray does not dispute that the pension benefits he received qualify as "retirement benefits" that reduce his disability benefits under this policy.[54] As the insurer's reduction letter explains, it was "notified [that Gray was] receiving other income that is deductible from [his] LTD benefit for a past period of time" resulting in "an overpayment."[55] Under the policy, if the insurer overpays benefits, "the

---

[50] *Opeta*, 484 F.3d at 1216 (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

[51] *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006).

[52] AR 19.

[53] AR 10.

[54] *See* ECF No. 51 at 16–17 ("The issue before the [c]ourt is an 'either/or' proposition: if Defendant's Trust policy is the correct version, RELIANCE had a right to offset GRAY's retirement pension . . . . Here, as stated, there is no dispute that GRAY's eligibility for his retirement service pension beginning in 2011 did not result from his Total Disability.").

[55] AR 842.

overpayment must be repaid to [the insurer]."[56]  Because the Trust policy covers Gray's claim, I find that the insurer did not err in its reduction and demand, nor in its denial of Gray's appeal, in applying the Trust policy and recalculating his benefits.[57]

**Conclusion**

IT IS THEREFORE ORDERED that plaintiff Michael Gray's renewed motion for **judgment [ECF No. 51] is DENIED**.

IT IS FURTHER ORDERED that defendant Reliance Standard Insurance Company's renewed motion for summary judgment **[ECF No. 50] is GRANTED**.

The Clerk of Court is **directed to ENTER JUDGMENT for Reliance Standard Insurance Company and against Michael Gray and CLOSE THIS CASE**.

_____
U.S. District Judge Jennifer A. Dorsey
August 27, 2021

---

[56] AR 20.

[57] *See* AR 854–59.